# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 31, 2012 Session

## MOHINDER N. SUD, v. MAN KENG HO, a/k/a SIMON HO, et al.

**Appeal from the Circuit Court for Knox County**
**No. 3-16-09    Hon. Wheeler Rosenbalm, Judge**

**No. E2011-01555-COA-R3-CV-FILED-MARCH 30, 2012**

The Trial Court held Man Keng Ho liable for unpaid rents on commercial property that Ho
had leased from his landlord.  Ho claimed against Soon Lee Pang, appellant, on the grounds
that Pang was the guarantor on the lease.  At the subsequent trial between Ho and Pang, Ho
acting as an interpreter for Pang, the Trial Court entered Judgment against Pang for the full
amount of the Judgment against Ho as guarantor under the terms of the lease.  Pang then filed
a Rule 60 Motion seeking relief from the Judgment, principally on the grounds that he was
entitled to an interpreter and the Trial Court erred in utilizing his co-defendant, who had an
interest in the case, as Pang's interpreter.  The Trial Court overruled the Rule 60 Motion and
Pang appealed to this Court.  We hold that the Trial Court abused its discretion in not
complying with Rules 41 and 42 of the Supreme Court of Tennessee, and remand for a retrial
on the merits.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D.
SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Dail R. Cantrell, Clinton, Tennessee, for the appellant, Soon Lee Pang.

John M. Foley, Knoxville, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the
appellee, Mohinder N. Sud.

## OPINION

## Background

Plaintiff, M. N. Sud, brought this action against defendant, Man Keng Ho, averring that he was the lessor and Ho was the lessee of a commercial property on Cumberland Avenue in Knoxville. Further, that Ho had defaulted on his lease payments, and that under the terms of the lease, Ho was to pay monthly lease payments, plus property taxes and insurance premiums. Sud averred that the defendant currently owed $56,971.99, and he also asked for attorney's fees.

Sud attached the lease dated April 5, 2004, which referenced the property, and lists the lessors as Man Keng Ho and Thong Weng Yong. Ho answered, and stated that he was without information regarding the lease, but admitted that the parties entered into a subsequent lease on May 18, 2004, and attached a copy of that lease. He alleged there were further parties who should be brought into the litigation, and that plaintiff had unclean hands because he interfered with Ho's ability to sublease the property. The lease attached to his Answer is dated May 18, 2004, and references the property on Cumberland Avenue.

Sud then moved to amend his Complaint to Add Party Defendant, Soon Lee Pang, and asked for injunctive relief.

The parties entered an Agreed Order, stating there were two issues for the Court to decide at trial, i.e., what amount was due to Sud from Ho under the leases, and whether Sud interfered with Ho's prospective contractual relationships by refusing to allow Ho to sublease the property. The Court entered an Order to add Soon Lee Pang as a defendant.

A hearing was held on June 25, 2009, and the Court entered an Order of Judgment stating that both parties were present at the hearing, and after reviewing the evidence, the Court found Ho owed Sud $95,140.66 pursuant to the leases, plus $2,000 to repair the property. The Court found that Ho was entitled to a credit for the security deposit he paid, however, such that the judgment was reduced to $79,721.91, plus $5,000 for attorney's fees. The Court determined that the claim against Soon Lee Pang would wait until he was properly before the Court.

Pang filed an Answer, stating that the service of process on him was improper, that he was never given notice of any default under the lease, and asserted that Sud failed to allow a sublease. The Court then held a hearing on August 26, 2009, and noted that Sud appeared with counsel, and that Pang appeared with no counsel but with co-defendant Ho acting as his interpreter. The Court stated that "because the defendant, Soon Lee Pang, claimed to have

very little command of the English language, the Court questioned him extensively, both directly and through the co-defendant." The Court found that Pang admitted that he understood he was being sued as the person who guaranteed the lease, and that he also admitted that he did not contest the amount of damages as being $84,721.91. The Court found that Pang admitted that he understood that additional attorney's fees were being claimed of $500 against him, and that he agreed that such amount was reasonable. The Court entered a judgment against Pang on September 8, 2009.

## Pang's Rule 60 Motion

On April 14, 2010, Pang filed a Rule 60 Motion, seeking relief from the judgment. He asserted that if the leases were examined, it showed that his purported signatures were different, and he asserted that the second lease dated May 18, 2004, was never signed by him. He further asserted that he had little command of the English language, and that he was not a U.S. citizen, and that he could not read English and understood very little when it was spoken, and needed an interpreter. He further averred that when he got the summons in the case, he asked Ho about it and Ho told him he didn't need to be concerned about it and that Ho and Ho's lawyer would handle everything. Pang stated that Ho prepared the Answer for Pang and told Pang to sign it, but Pang didn't understand any of it. He averred that when he appeared in court, he didn't understand what was going on and was dependent on Ho to interpret for him, and later learned that Ho didn't interpret truthfully. Pang asserted that Ho misled him for the purpose of making Pang responsible for the judgment.

Pang filed an Affidavit, stating that he was a citizen of Malaysia, and spoke and understood limited English, and could not read English at all. He affirmed that his affidavit was read to him by a friend, Eric Lai. Pang stated that it was never explained to him when he signed the first lease that he was guaranteeing Ho's payment. Pang stated that Ho told him his lawyer would take care of everything and that Pang wouldn't be involved. He stated that he gave all of the court documents to Ho's lawyer, and later Ho told him he needed to come to court to "get out of" the dispute. Pang stated that when he came to court, he didn't understand what was going on, and was dependent on Ho to explain. Pang stated that he never understood that he had the right to an attorney or to dispute the debt. Pang stated that Ho simply told him how to answer the Judge's questions, and to say yes to everything. Pang stated that he did not think the Judge was told by Ho correctly about the situation, and that he wanted another hearing with counsel and an interpreter.

Eric Lai also filed an Affidavit, and he stated that he personally knew Pang, and knew that Pang could not read English nor write it, and only spoke/understood a limited amount. Lai stated that he frequently had to interpret things for Pang, and did not believe Pang was made fully aware of what was going on in the case. Lai stated that he didn't believe that Ho

had accurately represented the Judge's questions to Pang. Pang's attorney, Harry Lillard, also filed an Affidavit, wherein he stated that he had to use an interpreter to communicate with Pang.

Pang filed a Motion seeking appointment of an interpreter, and for leave to file an amended answer. Pang then filed an amendment to his Rule 60 motion, asserting that when Sud's deposition was taken, Sud admitted that he had never met Pang before the litigation, and that he never saw him sign either lease. Sud further admitted that the other lessee, Mr. Yong, passed away in 2006, and that Pang's relationship was with Yong.

The Court held a hearing on the Rule 60 motion, and both leases were made exhibits. There was a stipulation entered that Pang signed Exhibit 1, but not Exhibit 2. Sud then took the stand, and stated that he had been in the U.S. since the 1950's, had attended the University of Tennessee, and had worked at TVA. Sud said that he got into renting commercial and residential real estate at some point, and that Exhibit 1 was a lease he prepared for his property. Sud stated that Ho contacted him about leasing the property, and he was concerned that Ho didn't have the financial ability to give proper security for the lease, until Ho brought in Yong as co-lessee. Sud stated that he still wanted a guarantor, and Pang signed as guarantor. Sud stated that he never met Pang at that time, and that Ho took the lease and got Pang to sign it and brought it back to him.

Sud stated that Ho and Yong later approached him about leasing 1705 Cumberland as well, and that was when that subsequent lease was executed. Sud admitted that he never spoke to Pang, and never saw him sign anything. He testified that he simply relied on the fact that Pang's signature was notarized. He stated that Yong passed away in 2006 in a drowning accident, and afterward, he had a conversation with Ho about continuing the leases, and Ho wrote him a letter saying he would take over full responsibility of the leases. Sud stated that he felt he had no choice but to release Yong's estate because Yong was a citizen of Malaysia and had no one here.

Raymond Ho was the next witness, and he testified that he knew defendant Ho, but was not related to him. He stated that he had known Pang for 10 years, and knew that Pang did not speak much English, and could barely communicate with his restaurant workers. Ho stated that he had never seen Pang converse at length in English, and that when he spoke to Pang, they spoke in Cantonese. He related that he had been out to eat with Pang, and had to order off of the menu for him, and that Pang did not consult him when he was sued, but he didn't think Pang could understood the court papers anyway.

Pang then testified through an interpreter, and he stated that he was 48 years old, and was a citizen of Malaysia, and testified that he understood a little English when spoken, but

did not read any English. Pang testified that he spoke Cantonese at home, and that he was friends with Mr. Yong before Mr. Yong passed away, and that they had been roommates at one time. Pang testified that before signing the first lease he had only met Ho once or twice and didn't really know him. Pang testified that he first became aware that he had been named in a lawsuit when he got a letter from Ho's lawyer, and he remembered coming to court in August 2009. He testified that Ho told him just to come to court and Ho would take care of everything. Pang testified that he was told he did not need a lawyer, and testified that he did not know what was going on in court, and Ho just told him to just say yes to all questions. Pang testified that he did not know what the Judge was saying that day but simply said "yes" when he was told to.

Pang testified that Ho admitted that he owed money to Sud. Pang testified that he didn't get a lawyer because Ho told him Ho's lawyer would handle it, and Pang testified that Ho told him "it was nothing to do with him (Pang)".

Pang testified that when he got the lawsuit papers, he didn't know what it was, but saw Ho's name on it and he passed it along to Ho. Pang testified that Ho prepared his Answer and told him to sign it and everything would be taken care of. Pang testified that no one explained the Answer to him. Pang testified that he had been operating a business in Oak Ridge for 17 years, and that a lawyer incorporated his business for him several years ago.

Pang further testified that he didn't know Ho very well when he got the papers, but trusted that he would take care of it because both of their names were on it. Pang admitted that he did start to look for a lawyer but Ho told him he would take care of it. Pang testified that he didn't understand when he was asked about whether Ho was his interpreter, whether he had a defense, or whether he owed any money to Sud.

Pang admitted that he owned a duplex in Oak Ridge that he rented out, but he testified that he didn't know who rented it, because his wife handled it. Pang testified that his wife spoke better English than he did, and when she saw the lawsuit papers she told him to take them to Ho. Pang testified he didn't sign the second lease, but admitted that the notary page had his correct driver's license number. He stated that he had given his license to Yong in the past, and that Yong had done things for him such as purchasing airline tickets, etc.

Excerpts from defendant Ho's deposition were read into the record, and Ho testified that he tried to tell the Judge that he would take care of everything. Ho admitted that he told Pang he would be responsible for everything before they went to court and Pang trusted him. Ho testified that he didn't understand all of the questions the Judge asked but answered "yes" because he wanted to be responsible for everything. He admitted that he also told Pang to

say "yes" to everything.

Pang's deposition was also filed, wherein he testified that he came to the US as a tourist, and waited for his son to be able to apply to get him a green card. Pang testified that his son was now in high school, and spoke English. Pang testified that he had been in the US for 20 years, and had owned a business named Wok 'n Roll since 1993. Pang testified that he understood "yes" and "no" in English.

Pang testified that Yong brought him the first lease and had him sign it, but he didn't remember that it was notarized. Pang testified that he signed the lease to help Yong, and Yong just told him it was a "small matter". Pang testified Yong was a good friend and he trusted him. Pang testified he never went with Ho and Yong to sign the document in front of a notary. Pang testified that he never signed the second lease, and admitted that he had, on occasion, given his license to Yong. Parenthetically, a review of the signature pages of both leases demonstrates that the signatures purporting to be Pang's clearly differs.

At the end of the hearing, the Trial Judge stated that he felt that Pang should bear the responsibility for his actions. The judge stated that Pang "acted like he wanted to rely on Ho", and the Court accepted that Ho was acting as Pang's intermediary. The Judge also stated that he thought Pang understood more than he let on, but knew that Pang didn't understand everything that was going on. The Judge noted that Pang could have hired a lawyer and didn't, and felt that Pang was to blame for the predicament that he was in. The Judge entered an Order denying Pang's Rule 60 motion, and Pang filed a Notice of Appeal.

**The Appeal**

The issue on appeal is whether the Trial Court abused its discretion in denying Pang's Rule 60 motion?

Pang argues that he should have been granted Rule 60 relief because of 1) Pang's mistake/excusable neglect in relying on Ho; 2) fraud/misrepresentation by an adverse party; and 3) the "catch-all" provision which applies in unique, exceptional, or extraordinary circumstances, such as here where Pang did not speak English and did not have a proper interpreter.

The ultimate and determinative issue is Pang's assertion that the Court erred to allow Ho to serve as interpreter for Pang at the first hearing. There is no transcript of that hearing, but the Judge noted in the Order of Final Judgment that Pang appeared without counsel, that Ho, who the Court noted was Pang's co-defendant, was acting as Pang's interpreter, and that because Pang "claimed to have very little command of the English language, the Court

questioned him extensively both directly and through the co-defendant." The Court stated that Pang "admitted that he understood that he was being sued as the person guaranteeing to the plaintiff the fulfillment of the terms and conditions of the LEASE AGREEMENT between the plaintiff and Man Keng Ho." The Court found that Pang did agree to act as guarantor on the lease for the entire sum owed by Ho, and awarded judgment against Pang for the entire amount, based on Pang's "representations" made in Court on the day of trial through Ho.

The Court's Order demonstrates that the Court relied upon Ho to act as interpreter for the Court's interactions with Pang, and used the information that was gleaned from Ho's interpretation of the Court's questions and Pang's answers to determine Pang's liability to Sud. Pang asserts that this was error because Ho was not a certified interpreter, Ho had a financial interest in the Court finding Pang responsible for this debt, and Ho did not interpret the Court's questions to Pang nor answer Pang's questions about what was going on, but rather simply told Pang how to answer the questions.

The Supreme Court has addressed the issue of interpreters in court proceedings in Rules 41 and 42 of the Rules of the Supreme Court of Tennessee. Rule 41 deals with ethics for interpreters, and the preamble states:

> Many persons who come before the courts are partially or completely excluded from full participation in the proceedings due to limited English proficiency ("LEP"). It is essential that the resulting communication barrier be removed, as far as possible, so that these persons are placed in the same position as similarly situated persons for whom there is no such barrier. As officers of the court, interpreters help assure that such persons may enjoy equal access to justice and that court proceedings and court support services function efficiently and effectively. Interpreters are highly skilled professionals who fulfill an essential role in the administration of justice.

Rule 41 goes on to state that if the proposed interpreter has a financial interest in the subject matter in controversy or is a party to the proceeding, this creates an actual or apparent conflict of interest which the court must consider. Tn. Sup. Ct. R 41, Canon 3.

Rule 42 also deals with the use of interpreters in court proceedings, and states that:

> (a) Appointing an interpreter is a matter of judicial discretion. It is the responsibility of the court to determine whether a participant in a legal proceeding has a limited ability to understand and communicate in English.

> (b) Recognition of the need for an interpreter may arise from a request by a party or

counsel, the court's own voir dire of a party or witness, or disclosures made to the court by parties, counsel, court employees or other persons familiar with the ability of the person to understand and communicate in English.

(c) The court shall appoint an interpreter according to the preference listed below:

1. State certified court interpreter;

2. State registered court interpreter;

3. Non-credentialed court interpreter.

(d) The court may appoint an interpreter of lesser preference (i.e., registered instead of certified or non-credentialed instead of registered) only upon a finding that diligent, good faith efforts to obtain the certified or registered interpreter, as the case may be, have been made and none has been found to be reasonably available. A non-credentialed interpreter may be appointed only after the court has evaluated the totality of the circumstances including the gravity of the judicial proceeding and the potential penalty or consequence involved.

(e) Before appointing a non-credentialed interpreter, the court shall make the following findings:

(i) that the proposed interpreter appears to have adequate language skills, knowledge of interpreting techniques, familiarity with interpreting in a court setting; and

(ii) that the proposed interpreter has read, understands, and will abide by the Rules of Ethics for Spoken Foreign Language Interpreters in Tennessee Courts.

(f) A summary of the efforts made to obtain a certified or registered interpreter and to determine the capabilities of the proposed non-credentialed interpreter shall be made in open court.

(g) The court shall use the services of multiple interpreters where necessary to aid interpretation of court proceedings.

Tn. Sup. Ct. R 42, Section 3. Section 4 of Rule 42 states that a participant may only waive the services of an interpreter when such waiver is knowing and voluntary, and with the court's approval. Moreover, the interpreter must take the following oath: "Do you solemnly swear or affirm that you will interpret accurately, completely and impartially, using your best

skill and judgment in accordance with the standards prescribed by law and the Rules of Ethics for Spoken Foreign Language Interpreters in Tennessee Courts; that you will follow all official guidelines established by this court for legal interpreting or translating, and discharge all of the solemn duties and obligations of legal interpretation and translation?" Tn. Sup. Ct. R 42, Section 4.

In this case, while the Trial Court recognized and noted in its Order that Pang "claimed to have very little command of the English language", and the Court noted in the Order that Ho was acting "as an interpreter" for Pang, the Court did not apply any of the above rules regarding proper appointment and use of an interpreter. The Court, in its discretion, recognized the need for an interpreter and allowed Ho to act as same, clearly relying on Ho to effectuate communication with Pang, but did not make a "finding that diligent, good faith efforts to obtain a certified or registered interpreter . . . have been made and none has been found to be reasonably available."

"A non-credentialed interpreter may be appointed only after the court has evaluated the totality of the circumstances, including the gravity of the judicial proceeding and the potential penalty or consequence involved." Tn. Sup. Ct. R. 42. The Court also did not make any findings regarding whether "the proposed interpreter appears to have adequate language skills, knowledge of interpreting techniques, familiarity with interpreting in a court setting" and whether "the proposed interpreter has read, understands, and will abide by the Rules of Ethics for Spoken Foreign Language Interpreters in Tennessee Courts." *Id.* The Court also did not place a summary of its efforts to obtain a certified or registered interpreter or to determine the capabilities of the proposed non-credentialed interpreter on the record. *Id.* The Court administered no oath to Ho. *Id.,* and as the Supreme Court has stated, "The use an interpreter who is neither certified nor registered is not reversible error in and of itself" but it may rise to the level of reversible error when "a certified or registered interpreter was readily available and where the use of the non-credentialed interpreter undermined the fairness of the proceeding in some way." *State v. Banks*, 271 S.W.3d 90, 120 (Tenn. 2008). There is nothing in the record to establish that any effort was made to find a credentialed interpreter and the use of Ho as interpreter who was a party to the proceeding, undermined the fairness of the proceeding.

The Trial Court allowed a co-defendant, who had a financial interest in the subject matter and the outcome, to serve as interpreter for someone that could essentially relieve him of all liability. Ho stood to have the entire judgment against him satisfied if Pang could be found liable for Ho's debt. Ho ultimately did have his lawful debt placed squarely upon Pang's shoulders as a guarantor on the lease.

Having found that Pang claimed to be limited in his command of the English

language, and having found that an interpreter was needed, the Court failed to follow proper procedure for the appointment of an interpreter, administration of an oath to the interpreter, and consideration of whether the proposed interpreter had a conflict of interest. We conclude that the Court abused its discretion in its decision to allow Ho to serve as interpreter for Pang, and to depend on Ho's representations to the Court in assessing the judgment. The Supreme Court rules recognize that litigants can be "partially or completely excluded from full participation in the proceedings due to limited English proficiency ("LEP"). It is essential that the resulting communication barrier be removed, as far as possible, so that these persons are placed in the same position as similarly situated persons for whom there is no such barrier." Tn. Sup. Ct. R 41 (emphasis supplied). We hold that Pang demonstrated that he was entitled to relief and the Trial Court abused its discretion in denying the same.

This record clearly establishes that Pang is entitled to a new trial. Man Keng Ho is taxed with the cost of the appeal.

_____
HERSCHEL PICKENS FRANKS, P.J.